# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF KANSAS

ANN ELWELL,
and
GREG ELWELL,

    *Plaintiffs,*

vs.

BOB BYERS,
and
LYNNEA KAUFMAN,

    *Defendants.*

Case No. 08-2227-EFM

## MEMORANDUM AND ORDER

Presently before the court is Defendants Lynnea Kauffman and Bob Byers's (Defendants's) motion for summary judgment (Doc. 58). For the following reasons, the motion is denied in part and granted in part.

### I. Background

This case is about qualified immunity, and procedural and substantive due process. Plaintiffs were licensed by the Kansas Department of Health and Environment to operate a child care facility, and held an exception to house and care for foster children. In March 2006, Plaintiffs became foster parents to a juvenile named T.S., who was 3 months old. Plaintiffs acted as foster parents to T.S. for fourteen months, during which time T.S.'s biological parents either relinquished or were relieved

of their parental rights. Plaintiffs bonded with T.S. while he was in their care, considered him to be their son, and notified the Kansas Department of Social and Rehabilitation Services (SRS) of their intention to adopt him. SRS acknowledged Plaintiffs as an "adoptive resource."

In April 2007, a report was made alleging that plaintiff Ann Elwell may have emotionally abused another foster child currently placed in Plaintiff's home. Additionally, Plaintiff's exception to house foster children was revoked.

On May 14, 2007, T.S. was removed from Plaintiffs' care without prior notice. Both defendants were employed in supervisory positions with SRS and involved in T.S.'s removal.

After T.S.'s removal, Plaintiffs petitioned the state court, challenging the removal and seeking the return and adoption of T.S. Multiple court hearings were held over the course of eleven months. Ultimately, the state district court found that T.S. had bonded with the new family, and found that an additional removal would not be in the best interest of the child. As such, T.S. has never returned to Plaintiffs.

Plaintiffs now bring this 42 U.S.C. § 1983 action, alleging violations of the Fourteenth Amendment's procedural and substantive due process rights. Defendants seek summary judgment, claiming they are exempt from this suit due to qualified immunity, that plaintiffs had no recognized liberty interest as foster parents and thus cannot state a violation of procedural or substantive due process, and that plaintiffs have no evidence to establish personal involvement or supervisory liability as to either defendant. Additionally, defendants claim their actions were objectionably reasonable and not conscious shocking, and thus plaintiffs are not entitled to punitive damages.

## II. Standards

Summary judgment is appropriate if the moving party demonstrates that "there is no genuine dispute as to any material fact" and that it is "entitled to judgment as a matter of law."[1] "An issue of fact is 'genuine' if the evidence allows a reasonable jury to resolve the issue either way."[2] A fact is "material" when "it is essential to the proper disposition of the claim."[3] The court must view the evidence and all reasonable inferences in the light most favorable to the nonmoving party.[4] The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact.[5] In attempting to meet this standard, the moving party need not disprove the nonmoving party's claim; rather, the movant must simply point out the lack of evidence on an essential element of the nonmoving party's claim.[6]

If the moving party carries its initial burden, the party opposing summary judgment cannot rest on the pleadings but must bring forth "specific facts showing a genuine issue for trial."[7] The opposing party must "set forth specific facts that would be admissible in evidence in the event of trial from which a rational trier of fact could find for the nonmovant."[8] "To accomplish this, the

---

[1] Fed. R. Civ. P. 56(a).

[2] *Haynes v. Level 3 Commc'ns, LLC*, 456 F.3d 1215, 1219 (10th Cir. 2006).

[3] *Id.*

[4] *LifeWise Master Funding v. Telebank*, 374 F.3d 917, 927 (10th Cir. 2004).

[5] *Thom v. Bristol-Myers Squibb Co.*, 353 F.3d 848, 851 (10th Cir. 2003) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986)).

[6] *Id.* (citing *Celotex*, 477 U.S. at 325.)

[7] *Garrison v. Gambro, Inc.*, 428 F.3d 933, 935 (10th Cir. 2005).

[8] *Mitchell v. City of Moore, Okla.*, 218 F.3d 1190, 1197 (10th Cir. 2000) (citing *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 670 (10th Cir. 1998)).

facts must be identified by reference to affidavits, deposition transcripts, or specific exhibits incorporated therein."[9] Conclusory allegations alone cannot defeat a properly supported motion for summary judgment.[10] The nonmovant's "evidence, including testimony, must be based on more than mere speculation, conjecture, or surmise."[11]

Finally, summary judgment is not a "disfavored procedural shortcut," but it is an important procedure "designed to secure the just, speedy and inexpensive determination of every action."[12]

### III. Analysis

To bring an actionable claim under § 1983, the plaintiff must: (1) show that they have been deprived of a right 'secured by the Constitution and the laws" of the United States; and (2) show that the defendants deprived them of this right acting "under color of any statute" of the state.[13] Mere negligence by a government official "that injures an individual's life, liberty, or property does not give rise to a Fourteenth Amendment violation actionable under § 1983."[14] Rather, to violate § 1983, a government official must engage in conduct that shocks the conscience.[15]

---

[9] *Adler*, 144 F.3d at 671.

[10] *White v. York Int'l Corp.*, 45 F.3d 357, 363 (10th Cir. 1995).

[11] *Bones v. Honeywell Intern, Inc.*, 366 F.3d 869, 875 (10th Cir. 2004).

[12] *Celotex*, 477 U.S. at 327 (quoting Fed. R. Civ. P. 1).

[13] *Johnson v. Rodrigues*, 293 F.3d 1196, 1201-1202 (10th Cir. 2002) (*quoting Flagg Bros., Inc. v. Brooks*, 436 U.S. 149, 98 S.Ct. 1729 (1978)).

[14] *Webber v. Mefford*, 43 F.3d 1340, 1343 (10th Cir. 1994); *see also Daniels v. Williams*, 474 U.S. 327, 328 (1986) (noting that negligent conduct is "categorically beneath the constitutional due process threshold" and finding that the "Due Process Clause is simply not implicated by a *negligent* act of an official causing unintended loss of or injury to life, liberty, or property").

[15] *See County of Sacramento v. Lewis*, 523 U.S. 833 (1998)*; Childress v. City of Arapaho*, 210 F.3d 1154, 1157 (10th Cir. 2000).

A. Qualified Immunity

Defendants contend that they are protected from Plaintiffs' § 1983 claim because they are entitled to qualified immunity for their actions. "Qualified immunity balances two important interests - the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties responsibly."[16] When a defendant claims qualified immunity, the burden shifts to the plaintiff to establish: "(1) that the defendant's actions violated a federal constitutional or statutory right; and (2) that the right was clearly established at the time of the defendant's actions."[17] Courts have discretion to "decid[e] which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand."[18]

To be clearly established, "[t]he contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right."[19] Thus, the question of whether qualified immunity applies is no longer a "scavenger hunt for prior cases with precisely the same facts" but rather is focused on "the more relevant inquiry of whether the law put officials on fair notice that the described conduct was unconstitutional."[20]

In *Smith v. Organization of Foster Families for Equality and Reform (OFFER)*, the United States Supreme Court stated that foster parents *may* have a distinct liberty interest in foster

---

[16] *Pearson v. Callahan,* 555 U.S. 223, 129 S.Ct. 808, 818 (2009).

[17] *PJ ex rel Jensen v. Wagner*, 603 F.3d 1182, 1196 (10th Cir. 2010).

[18] *Pearson,* 129 S.Ct. at 815.

[19] *Brosseau v. Haugen*, 543 U.S. 194, 199 (2004) (quoting *Anderson v. Creighton*, 483 U.S. 635, 640 (1987)).

[20] *Casey v. City of Fed. Heights*, 509 F.3d 1278, 1284 (10th Cir.2007) (quotations omitted).

relationships, but never decided the question definitively.[21] In examining *OFFER*, the Tenth Circuit noted that there is the "possibility of a protected relationship arising between foster parents and a child placed as an infant who has remained for several years and has never known his real parents."[22] Nevertheless, "[a]lthough emotional ties between children and unrelated adults *may* give rise to a constitutionally protected liberty interest, such an interest is limited by state law when the requisite emotional ties 'have their origins in an arrangement in which the State has been a partner from the outset.'"[23] When "the claimed interest derives from a knowingly assumed contractual relation with the State, it is appropriate to ascertain from state law the expectations and entitlements of the parties." Thus, although federal courts have addressed the issue of liberty interests in foster relationships, there is no clear answer in the Tenth Circuit. As such, the only liberty interest that could have been clearly established is one based on state law.

Plaintiffs argue that Defendants had a clear and fair warning that their conduct was unconstitutional based on K.S.A. 38-2258, which provides, in part, "[e]xcept as provided . . . if a child has been in the same foster home or shelter facility for six months or longer . . . the secretary shall give written notice of any plan to move the child to a different placement . . . ." Plaintiffs argue that this statute created a liberty interest in a continuing relationship with their foster children and that it was sufficient to inform Defendants that removing T.S., who had been with the Plaintiffs for fourteen months, would be a constitutional violation.

---

[21] 431 U.S. 816 (1977).

[22] *Spielman v. Hildebrand*, 873 F.2d 1377, 1384 (10th Cir. 1989) (citing *Smith v. OFFER*, 431 U.S. 816, 844 (1977)).

[23] *Id.* (quoting *OFFER*, 431 U.S. at 845).

Defendants argue that K.S.A. 38-2258 did not apply because Plaintiffs lost their status as foster parents on May 14, 2007, when the exception allowing them to provide foster care was withdrawn. Defendants also argue that K.S.A. 65-506,[24] which does not allow the placement of children in an unlicensed facility, made T.S.'s continuing presence in the home illegal. Additionally, defendants claim that SRS policy does not permit a child to remain in a placement following a finding of child abuse, and that the loss of the license predicated the loss of insurance.

As explained in this court's prior order[25], K.S.A. 65-506 is inapplicable in this case because it refers only to the *placement* of the child and does not specifically outline procedure for removal. K.S.A. 38-2258, however, is clear: it mandates that written notice shall be given after a child has been in the same foster home for six months or longer. This is precisely the case here, where T.S. was with the Plaintiffs for fourteen months. Accordingly, Plaintiffs have met their burden of proving that defendants violated a right that was clearly established at the time the defendants removed T.S. from the home. As such, Defendants are not entitled to qualified immunity.

B. Procedural Due Process

The due process clause of the Fourteenth Amendment provides that no state shall "deprive any person of life, liberty, or property, without due process of law."[26] "Procedural due process

---

[24] K.S.A. 65-506 provides: "The secretary of health and environment shall serve notice of the issuance, suspension or revocation of a license to conduct a maternity center or child care facility to the secretary of social and rehabilitation services, juvenile justice authority, department of education, office of the state fire marshal, county, city-county or multi-county department of health, and to any licensed child placement agency or licensed child care resource and referral agency serving the area where the center or facility is located. A maternity center or child care facility that has had a license suspended, revoked or denied by the secretary of health and environment shall notify in writing the parents or guardians of the enrollees of the suspension, revocation or denial. Neither the secretary of social and rehabilitation services nor any other person shall place or cause to be placed any maternity patient or child under 16 years of age in any maternity center or child care facility not licensed by the secretary of health and environment."

[25] Memorandum and Order denying Defendants' Motion to Dismiss, issued July 16, 2009, (Doc. 25).

[26] U.S. Const. amend. XIV, § 1.

imposes constraints on governmental decisions which deprive individuals of 'liberty' or 'property' interests within the meaning of the . . . Fourteenth Amendment."[27] "The fundamental requirement of due process is the opportunity to be heard at a meaningful time in a meaningful manner."[28] "For this reason, a hearing is generally required before a person may be deprived of a protected interest."[29]

To determine whether an individual has been deprived of their procedural due process rights, "courts must engage in a two-step inquiry: (1) did the individual possess a protected interest such that the due process protections were applicable; and if so, then (2) was the individual afforded an appropriate level of process."[30]

*1. Protected Interest*

The Supreme Court has long recognized family relationships as one of the liberties protected by the due process clause of the Fourteenth Amendment.[31] "There does exist a 'private realm of family life which the state cannot enter' that has been afforded both substantive and procedural protection."[32] Many courts have recognized liberty interests in familial relationships other than strictly parental ones.[33] The Supreme Court has noted that when the due process clause "is invoked in a novel context, it is our practice to begin the inquiry with a determination of the precise nature

---

[27] *Matthews v. Eldridge*, 424 U.S. 319, 332 (1976).

[28] *Id.* at 333.

[29] *Brammer-Hoelter v. Twin Peaks Charter Academy*, 492 F.3d 1192, 1209 (10th Cir. 2007) (citing *OFFER*, 431 U.S. at 848).

[30] *Farthing v. City of Shawnee*, 39 F.3d 1131, 1135 (10th Cir. 1994).

[31] *OFFER*, 431 U.S. at 844.

[32] *Id.* (quoting *Prince v. Massachusetts*, 321 U.S. 158, 166 (1944)).

[33] *See, e.g., Moore v. City of East Cleveland*, 431 U.S. 494 (1977) (plurality opinion)(zoning ordinance could not prohibit grandmother from living with her grandsons); *OFFER*, 431 U.S. 816 (foster parents may have liberty interest in relationship with foster children) (dicta).

of the private interest that is threatened by the State."[34] Such a novel context is presented in this case because no Supreme Court or Tenth Circuit case has explicitly declared whether foster parents have a protected liberty interest in foster children.

Natural parents have a protected liberty interest in their familial relationship with their children.[35] Nevertheless, the Supreme Court has made clear that neither biological nor adoptive ties are essential for developing a protected family relationship, when it noted that "[n]o one would seriously dispute that a deeply loving and interdependent relationship between an adult and a child in his or her care may exist even in the absence of blood relationship."[36] Indeed, in *OFFER*, the Supreme Court noted in dicta the possibility of a protected relationship arising between foster parents and a child placed as an infant who has remained for a long time and has never known his real parents.[37]

This case is similar to the situation discussed in dicta in *OFFER*, thus giving rise to a potential protected relationship between foster parents and child. First, T.S. was an infant when he was placed with Plaintiffs, and remained solely in their care for fourteen months. Second, there is no tension between any liberty interests of foster parents and the competing interests of natural parents because both of T.S.'s biological parents had their rights terminated. Third, the facts of this case are similar to several out of circuit cases, which found that under certain facts, foster parents do have a liberty interest in their foster children. Though not binding, this court finds those opinions

---

[34] *Lehr v. Robertson*, 463 U.S. 248, 256 (1983).

[35] *OFFER*, 431 U.S. at 844 n. 51.

[36] *Id.* at 844.

[37] *Id.*

persuasive. For example, in *McLaughlin v. Pernsley*, a federal district court in Pennsylvania found that foster parents had a liberty interest subject to due process protections where a Pennsylvania statute, similar to the Kansas statute, mandated foster parents be given notice prior to the removal of a child.[38] Thus, when considering all the facts of this case and the decisions of other circuits, this court holds, as a matter of first impression, that when a foster child is placed with foster parents as an infant in Kansas, never knows his natural parents, and resides with the foster family for more then six months, the foster parents have a liberty interest in the child and the procedural due process must be followed prior to removal.

    *2. Level of Process*

Because the Plaintiffs in this particular case have a liberty interest in their foster child, the next question for the court to consider is whether the Plaintiffs were afforded an appropriate level of process.

"Although emotional ties between children and unrelated adults may give rise to a constitutionally protected liberty interest, such an interest is limited by state law when the requisite emotional ties 'have their origins in an arrangement in which the State has been a partner from the outset.'"[39] When "the claimed interest derives from a knowingly assumed contractual relation with the State, it is appropriate to ascertain from state law the expectations and entitlements of the parties."[40] As discussed above, Kansas statutes clearly require notification prior to removal after a child has been with the foster parents more than six months. As such, it would be reasonable for the

---

[38] 693 F. Supp. 318, 326 (E.D. Pa. 1988).

[39] *Spielman*, 873 F.2d at 1384 (quoting *OFFER*, 431 U.S. at 845).

[40] *OFFER*, 431 U.S. at 845-46.

parties to expect notice prior to removal. Nonetheless, no notice was given to the Plaintiffs. Accordingly, Plaintiffs have a viable procedural due process claim and summary judgment is not appropriate on this claim.

C. Substantive Due Process

Although this court has determined that Plaintiffs set forth sufficient facts demonstrating that they had a liberty interest created by Kansas statute for the purposes of procedural due process, to establish a substantive due process claim, Plaintiffs must additionally prove (1) that they were deprived of a fundamental right or interest and (2) that the government's deprivation of that protected interest shocks the conscious.[41]

It is well established that the Constitution protects family relationships and a parent's right to the care, custody, control, and management of their children.[42] Nevertheless, the status of foster parents is different, and the Supreme Court has noted that "whatever emotional ties may develop between foster parent and foster child have their origins in an arrangement in which the state has been a partner from the outset."[43] This is in contrast to traditional family relationships whose origins arise apart from the state. Ultimately, the Supreme Court has concluded that there is a very limited constitutional liberty in a foster family, which arises from a "knowingly assumed relationship with the State," and that the state law sets the expectations and entitlements of the parties.[44]

---

[41] *See Seegmiller v. LaVerkin City*, 528 F.3d 762, 767 (10th Cir. 2008).

[42] *Michael H. v. Gerald D.*, 491 U.S. 110 (1989); *Moore*, 431 U.S. 494.

[43] *OFFER*, 431 U.S. at 845.

[44] *Id.* at 845-46.

-11-

In light of the expressed skepticism of the Supreme Court, as well as the inherent temporary nature of a foster family relationship, this court concludes that summary judgment is appropriate for the substantive due process claim. While it is clear, as discussed above, that Kansas has established a regulatory framework vesting foster parents with *some* liberty interest in the continued existence of their relationship with foster children sufficient to establish a possible procedural due process claim, this interest does not rise to the level of a fundamental right meriting substantive due process protection. Further, the cases cited and relied upon by the Plaintiffs in support of their claims of substantive due process only establish that a liberty interest may exist for foster parents in the *procedural* due process context, not *substantive* due process.[45] As such, summary judgment is proper on the substantive due process claim.

## D. Personal and Supervisory Liability

An essential element of a civil rights claim against an individual is that person's direct personal participation in the acts or inactions upon which the complaint is based.[46] The doctrine of respondeat superior does not apply; as such, a plaintiff may not obtain § 1983 relief from an official based solely on his or her capacity as a supervisor.[47] Instead, "the defendant's role must be more than one of abstract authority over individuals who actually committed a constitutional violation."[48]

---

[45] *Rivera v. Marcus*, 696 F.2d 1016 (2d Cir. 1982) (holding that half-sister had liberty interest in preserving familial relationship with half brother in foster care arrangement and entitled to procedural due process); *Thelen v. Catholic Soc. Servs.*, 691 F. Supp. 1179 (E.D. Wis. 1988) (holding that prospective parents have no constitutional entitlement to a pre-removal hearing during the initial six-month period of placement); *Brown v. San Joaquin County*, 601 F. Supp. 653 (E.D. Cal. 1985) (holding that liberty interest may exist in foster family relationship requiring procedural due process); *Berhow v. Crow*, 423 So.2d 371 (Fla. App. 1 Dist. 1982) (holding that foster parents had liberty interest entitling them to procedural due process).

[46] *Kentucky v. Graham*, 473 U.S. 159, 166 (1985); *Trujillo v. Williams*, 465 F.3d 1210, 1227 (10th Cir. 2006).

[47] *See Worrell v. Henry*, 219 F.3d 1197, 1214 (10th Cir. 2000).

[48] *Fogarty v. Gallegos*, 523 F.3d 1147, 1527 (10th Cir. 2008).

"Individual liability under 42 U.S.C. § 1983 must be based on personal involvement in the alleged constitutional violation."[49] Indeed, § 1983 is not a strict liability statute and persons are only liable if they subject or cause a plaintiff to be subjected to a deprivation of legal rights.[50] "[A] defendant's *direct personal responsibility* for the claimed deprivation of a constitutional right must be established."[51]

In this case, there are sufficient facts in dispute regarding what role, if any, defendants played in the removal of T.S. from Plaintiff's home. Because of the disputed factual issues involved, defendant's claim that summary judgment is appropriate because of the lack of evidence of personal involvement or supervisory liability is without merit.

E. Punitive Damages

Punitive damages are appropriate in an action under § 1983 only if the challenged conduct is "shown to be motivated by evil motive or intent, or when it involves reckless or callous indifference to the federally protected rights of others."[52] As with the claim for personal and supervisory liability, there are sufficient facts in dispute regarding the actions of the parties in this case. As such, summary judgment on the punitive damages issue is not appropriate.

---

[49] *Foote v. Spiegel*, 118 F.3d 1416, 1423 (10th Cir. 2997).

[50] *Porro v. Barnes*, 624 F.3d 1322, 1327 (10th Cir. 2010).

[51] *Id.* (quoting *Trujillo*, 465 F.3d at 1227) (emphasis added).

[52] *Searles v. Van Bebber*, 251 F.3d 869, 879 (10th Cir. 2001).

**IT IS THEREFORE ORDERED** that Defendants' Joint Motion for Summary Judgement (Doc. 58) is hereby GRANTED IN PART and DENIED IN PART.

**IT IS SO ORDERED**.

Dated this 20th day of May, 2011.

*Eric F. Melgren*
ERIC F. MELGREN
UNITED STATES DISTRICT JUDGE